Kasavana v Vela (2019 NY Slip Op 03777)





Kasavana v Vela


2019 NY Slip Op 03777


Decided on May 15, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 15, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOHN M. LEVENTHAL
SYLVIA O. HINDS-RADIX
COLLEEN D. DUFFY, JJ.


2017-06570
 (Index No. 8488/15)

[*1]Elizabeth Kasavana, appellant, 
v
Christine Vela, respondent.


Harfenist Kraut & Perlstein, LLP, Lake Success, NY (Neil Torczyner of counsel), for appellant.
Rand P. Schwartz, Massapequa Park, NY (Scott J. Gilmore of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for defamation, the plaintiff appeals from an order of the Supreme Court, Suffolk County (Peter H. Mayer, J.), dated March 31, 2017. The order denied the plaintiff's motion for summary judgment on the issue of liability and granted the defendant's cross motion for summary judgment dismissing the third amended complaint.
ORDERED that the order is reversed, on the law, with costs, the plaintiff's motion for summary judgment on the issue of liability is granted, and the defendant's cross motion for summary judgment dismissing the third amended complaint is denied.
The plaintiff and the defendant were former colleagues at Watson Productions, LLC, doing business as Skyline New York (hereinafter Skyline). The plaintiff was employed by Skyline since 2004. She testified at her deposition that she performs "accounting tasks" and assists with payroll. The defendant began her employment at Skyline in June 2013, but her employment was terminated in May 2014. On February 10, 2015, the defendant sent an email to ADP (hereinafter the ADP email), Skyline's payroll administrator, stating that she "was a victim of IRS Identity Theft," that she had been notified by the IRS that "someone filed an EZ form with suspicious WRONG info" and that she "[had] reason to believe" that the plaintiff "had access to [her] records and possibly did this." The defendant further stated that she "[had] been told there were other SKYLINE employees affected by [the plaintiff's] wrongdoings, abusing her position and power (financially) from Skyline" and that the plaintiff "is a very [d]angerous individual and should NOT be in charge of accounting/monies at Skyline or any company for that matter." That same day, the defendant sent an email to Robert Watson (hereinafter the Watson email), president and a principal of Skyline, stating that "someone tried to file a 2014 tax return using [her] name, [her] info and . . . [her social security number]" and that she "[had] reason to believe [the plaintiff] is responsible for this attack on [her] credit, [her] finances and [her] LIFE!" The defendant also stated that she "learned of the story of [the plaintiff] stealing funds, for her deposit from [Skyline's] accounts to purchase her condo in 2013." The content of the ADP email was also included in the Watson email. After the defendant sent the Watson email, she had two telephone conversations with Watson and Lawrence Centola, the general manager of Skyline, concerning her accusations. Watson and Centola subsequently [*2]confronted the plaintiff and, after approximately three days, the plaintiff resumed her usual job responsibilities.
In May 2015, the plaintiff commenced this action against the defendant to recover damages for defamation. The plaintiff subsequently moved for summary judgment on the issue of liability, contending that the defendant's statements constituted assertions of fact and were defamatory per se because they charged the plaintiff with a serious crime and tended to injure her in her profession. In support of her motion, the plaintiff submitted, among other things, her own affidavit wherein she denied the accusations made by the defendant in the Watson email and the ADP email. The plaintiff also submitted a transcript of the defendant's deposition testimony, during which the defendant acknowledged that, when she sent the Watson email and the ADP email, she had no specific information that the plaintiff had used the defendant's W2 to file a tax return. The defendant cross-moved for summary judgment dismissing the third amended complaint, arguing that the statements were nonactionable expressions of opinion, and neither charged the plaintiff with the commission of a crime or injured her in her profession. By order dated March 31, 2017, the Supreme Court denied the plaintiff's motion and granted the defendant's cross motion, finding that the challenged statements constituted nonactionable "opinion of criminality which could be regarded as mere hypothesis." The court also held that the statements in the ADP email were not defamatory per se. The plaintiff appeals.
" The elements of a cause of action for defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se'" (Stone v Bloomberg L.P., 163 AD3d 1028, 1029, quoting Greenberg v Spitzer, 155 AD3d 27, 41). A statement is defamatory per se if it (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business or profession; (3) imputes to the plaintiff a loathsome disease; or (4) imputes unchastity to a woman (see Liberman v Gelstein, 80 NY2d 429, 435).
"Since falsity is a necessary element of a defamation cause of action and only facts' are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action'" (Gross v New York Times Co., 82 NY2d 146, 152-153, quoting 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 139; see Davis v Boeheim, 24 NY3d 262, 268). Thus, "[a]n expression of pure opinion is not actionable . . . , no matter how vituperative or unreasonable it may be" (Steinhilber v Alphonse, 68 NY2d 283, 289). "A pure opinion may take one of two forms. It may be a statement of opinion which is accompanied by a recitation of the facts upon which it is based, or it may be [a]n opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts" (Davis v Boeheim, 24 NY3d at 269 [internal quotation marks omitted]). Conversely, "an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, is a mixed opinion and is actionable" (id. [ellipses and internal quotation marks omitted]). The latter is actionable "not because they convey false opinions' but rather because a reasonable listener or reader would infer that the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]'" (Gross v New York Times Co., 82 NY2d at 153-154, quoting Steinhilber v Alphonse, 68 NY2d at 290; see Guerrero v Carva, 10 AD3d 105, 112).
"Whether a particular statement constitutes an opinion or an objective fact is a question of law" (Mann v Abel, 10 NY3d 271, 276; see Kamchi v Weissman, 125 AD3d 142, 157; Abakporo v Daily News, 102 AD3d 815, 816). "In distinguishing between facts and opinion, the factors the court must consider are (1) whether the specific language has a precise meaning that is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether the context in which the statement appears signals to readers [or listeners] that the statement is likely to be opinion, not fact" (Silverman v Daily News, L.P., 129 AD3d 1054, 1055; see Mann v Abel, 10 NY3d at 276; Steinhilber v Alphonse, 68 NY2d at 292). "The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the [*3]assertion of undisclosed facts justifying the opinion" (Steinhilber v Alphonse, 68 NY2d at 290).
The first cause of action of the third amended complaint is predicated on the statements made by the defendant in the Watson email and during her telephone conversations with Watson and Centola. Contrary to the Supreme Court's determination, the plaintiff established, prima facie, that these statements constituted false assertions of fact, and represented more than "mere hypothesis" (Gross v New York Times Co., 82 NY2d at 155), or "mere allegations to be investigated" (Brian v Richardson, 87 NY2d 46, 53; see Rossi v Attanasio, 48 AD3d 1025, 1028; Clark v Schuylerville Cent. School Dist., 24 AD3d 1162, 1164). The precise meaning of the defendant's statements that "someone tried to file a 2014 tax return using [her] name, [her] info and . . . [her social security number]" and that she "[had] reason to believe [the plaintiff] is responsible for this attack on [her] credit, [her] finances and [her] LIFE!" is that the plaintiff used the defendant's social security number to file a fraudulent tax return (see Gross v New York Times Co., 82 NY2d at 155-156; Hoffman v Landers, 146 AD2d 744, 746). The statements can readily be proven true or false and, given the tone and overall context in which the statements were made, signaled to the average reader or listener that the defendant was conveying facts about the plaintiff (see Thomas H. v Paul B., 18 NY3d 580, 585; Suarez v Angelet, 90 AD3d 906, 907; cf. GS Plasticos Limitada v Bureau Veritas, 84 AD3d 518, 519; Vengroff v Coyle, 231 AD2d 624, 625). This includes the defendant's statement that she had "learned of the story of [the plaintiff] stealing funds, for her deposit from [Skyline's] accounts to purchase her condo in 2013." Alternatively, the challenged statements are mixed opinion, which is actionable, as a reasonable reader may infer that the defendant had knowledge of facts, unknown to the audience, which support the assertions she made (see Gross v New York Times Co., 82 NY2d at 153-154). The plaintiff also established, prima facie, that the statements were defamatory per se since they charged the plaintiff with the commission of a serious crime and would tend to injure the plaintiff in her profession by imputing "fraud, dishonesty, misconduct, or unfitness in conducting [her] profession" (Greenberg v Spitzer, 155 AD3d at 47 [internal quotation marks omitted]; see LeBlanc v Skinner, 103 AD3d 202, 214). Although the plaintiff acknowledged during her deposition that she was still employed by Skyline, that her salary had increased, and that her job responsibilities did not change, "[i]n cases involving defamation per se, the law presumes that damages will result, and special damages need not be alleged or proven" (Gatz v Otis Ford, 274 AD2d 449, 450; see Liberman v Gelstein, 80 NY2d at 435).
In opposition, the defendant failed to raise a triable issue of fact. The defendant's accusation of criminality is not transformed into a nonactionable expression of opinion simply because she prefaced her statement with, "I have reason to believe" (see Davis v Boeheim, 24 NY3d at 272-273; Thomas H. v Paul B., 18 NY3d at 585; Gross v New York Times Co., 82 NY2d at 155; Silsdorf v Levine, 59 NY2d 8, 16; Suarez v Angelet, 90 AD3d at 907). In addition, the defendant's use of the word "story" when stating that she learned about "[the plaintiff] stealing funds, for her deposit from [Skyline's] accounts to purchase her condo in 2013," does not negate the impression of a factual assertion (cf. Walter Boss, Inc. v Katen, 26 AD3d 371, 372). Indeed, " the fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character'" (Thomas H. v Paul B., 18 NY3d at 586, quoting Brian v Richardson, 87 NY2d at 54).
With respect to the second cause of action, which is predicated on the statements made by the defendant in the ADP email, we disagree with the Supreme Court's determination that the statements constituted nonactionable "mere hypothesis" of criminality. In the ADP email, the defendant stated, in relevant part, that she "was a victim of IRS Identity Theft," that "someone filed an EZ form with suspicious WRONG info," and that she had "reason to believe [that her] former colleague, [the plaintiff], the Accountant/Receptionist at SKYLINE . . . had access to [her] records and possibly did this." In support of her motion, the plaintiff established, prima facie, that these statements, like the statements in the Watson email, have a precise meaning, can be proven true or false, and that the overall context in which the utterances were made is indicative of factual assertions, even if couched in the form of an opinion (see Davis v Boeheim, 24 NY3d at 272-273; Thomas H. v Paul B., 18 NY3d at 585-586; cf. Matter of Konig v CSC Holdings, LLC, 112 AD3d 934, 935; Pecile v Titan Capital Group, LLC, 96 AD3d 543, 544). Although "accusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which [*4]they are based are fully and accurately set forth" (Gross v New York Time Co., 82 NY2d at 155), here the statements in the ADP email implied that the defendant had knowledge of undisclosed facts that supported her claim that the plaintiff engaged in criminal conduct (see Baker v Galusha, 114 AD3d 1124, 1125; Gjonlekaj v Sot, 308 AD2d 471, 474; cf. Melius v Glacken, 94 AD3d 959, 960). Contrary to the Supreme Court's determination, the plaintiff also established, prima facie, that the statements in the ADP email were defamatory per se, since a reasonable reader would understand the statements as accusing the plaintiff of committing a serious crime and would tend to injure the plaintiff in her profession (see Geraci v Probst, 15 NY3d 336, 344-345; cf. Zetes v Stephens, 108 AD3d 1014, 1019; Caffee v Arnold, 104 AD2d 352, 353). In opposition, the defendant failed to raise a triable issue of fact.
Accordingly, the Supreme Court should have granted the plaintiff's motion for summary judgment on the issue of liability. For these same reasons, the court should have denied the defendant's cross motion for summary judgment dismissing the third amended complaint.
DILLON, J.P., LEVENTHAL, HINDS-RADIX and DUFFY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court